481 S.E.2d 717

**Mamie SANDERS, Personal Representative of the Estate of Jeffroe Sanders, Nathaniel Forrester, Personal Representative of the Estate of Wilson Forrester, Leroy Solomons, Personal Representative of the Estate of Althea Solomons, and Henry Williams, Respondents,**

v.

**AMERICAN SOUTHERN INSURANCE COMPANY, The State of South Carolina Budget and Control Board, Division of General Services, Insurance Reserve Fund, and Office of the Governor of the State of South Carolina and Transportation Management Services, Inc., Appellants.**

No. 2628.

Court of Appeals of South Carolina.

Heard Nov. 7, 1996.

Decided Feb. 3, 1997.

---

Charles E. Carpenter, Jr., and Michael R. Sullivan, both of Richardson, Plowden, Howser, Carpenter & Robinson, Columbia, for appellant, American Southern Insurance Company.

Michael H. Montgomery, Michael S. Pauley and Andrea S. Canupp, all of Lide, Montgomery, Potts & Medlock, Columbia, for appellant, Transportation Management Services, Inc.

William L. Pope and Roy Laney, both of Pope & Rodgers, Columbia, for appellants, The State of South Carolina Budget and Control Board, Division of General Services, Insurance Reserve Fund, and Office of the Governor of the State of South Carolina.

John E. Parker and Clyde A. Eltzroth, both of Peters, Murdaugh, Parker, Eltzroth & Detrick, Hampton, for respondents.

HUFF, Judge.

Plaintiffs brought this declaratory judgment action to reform an automobile liability insurance policy issued by the South Carolina Insurance Reserve Fund to require the State

to provide underinsured motorist coverage. All parties moved for summary judgment. The court granted Plaintiffs' motion and reformed the insurance policy to include underinsured motorist coverage. All defendants appeal. We reverse.

## FACTS

On September 22, 1987, the Insurance Reserve Fund (IRF) of the Division of General Services of the State of South Carolina Budget and Control Board issued a bid invitation on behalf of the State of South Carolina, seeking a qualified bidder to provide reinsurance policies that the IRF would issue to certain state-owned vehicles. The express purpose of the bid invitation was to "provide 100% reinsurance on a fleet of vehicles maintained by governmental entities" for the IRF. The bid invitation (in pertinent part) provided:

7. Reinsurance Agreement. The Insurance Reserve Fund will issue a separate contract, on Insurance Reserve Fund paper, to each entity. The successful bidder will issue a blanket reinsurance contract to the Insurance Reserve Fund, reinsuring the Fund 100%. Such an agreement is not subject to premium tax. The reinsurer will handle claims on a direct basis with each individual entity.

8. Claims Service. The successful bidder must be able to provide claims service effective 2–1–88. The headquarters of the claims handling service must be located in Columbia and statewide claims service must be available on a 24 hour a day, 7 day per week basis.

9. Engineering and loss control service must be available on an ongoing basis. Such service is to include a program of driver education and maintenance of a safe driver award program.

The bid invitation also specified the successful bidder would reinsure the IRF's policy form which was attached to the bid specifications. The policy form did not contain any provisions or provide coverages for underinsured motorist coverage.

American Southern Insurance Company (American Southern) was the successful bidder and was awarded the contract of reinsurance on January 12, 1988. American Southern reinsured the fleet of state-owned vehicles and any changes in the fleet were adjusted in the monthly premium. The policy

covering the state-owned vehicles provides only uninsured motorist coverage.

The vehicle occupied by plaintiffs was a 1990 Chevrolet Celebrity station wagon owned by the State and assigned to the Office of the Governor (Governor's Office), Division of Economic Opportunity. This vehicle was part of a fleet insured by IRF and reinsured by American Southern. The Division of Economic Opportunity is responsible for Title XIX Medicaid Transportation in the state. Transportation Management Services, Inc. (TMSI) and the Governor's Office entered into an agreement in July, 1990 for TMSI to provide Title XIX Medicaid transportation services for Hampton County residents. TMSI is a private for-profit transportation provider. Transportation was provided for Medicaid recipients to travel to the doctor, pharmacy, physical therapy and for other medical services.

On June 20, 1991, a TMSI driver was transporting plaintiffs to dialysis in Hampton County in the 1990 Chevrolet Celebrity. An oncoming vehicle swerved into the lane occupied by the TMSI driver, causing a head-on collision. The TMSI driver and three passengers were killed. The remaining passenger was injured. The driver of the other vehicle was solely responsible for the accident. The at-fault driver's insurance coverage could not cover the claims of the plaintiffs. Plaintiffs brought this action seeking reformation of the insurance policy issued by the IRF to include underinsured motorist coverage.

## LAW/ANALYSIS

The IRF was created to provide insurance to the State of South Carolina and its political subdivisions, departments, agencies, institutions, commissions, boards and employees. This function is carried out on a non-profit basis "so as to protect the State against tort liability and to protect personnel against tort liability arising in the course of employment." S.C.Code Ann. § 1-11-140 (Supp.1995). As required by statute, this is the sole means of insurance for these governmental bodies and all vehicles owned by the Governor's Office. South Carolina Code Ann. § 10-7-120 (1986) expressly authorizes the Budget and Control Board through the IRF to reinsure

any portion of insurance liability established pursuant to § 1–11–140. Section 10–7–120 provides:

> The State Budget and Control Board may reinsure, upon terms which it may deem most advantageous, in a reliable insurance company or companies, such portion of their insurance liability as is commensurate with the principle of safe underwriting. The State Budget and Control Board shall from time to time prescribe such rules and regulations as may be necessary in placing and handling this reinsurance.

This court has previously addressed the question of whether the IRF is an "automobile insurer" that must offer underinsurance within the meaning of S.C.Code Ann. § 38–77–160 (Supp.1995). In *Davis v. State of South Carolina Budget and Control Board,* 298 S.C. 135, 378 S.E.2d 604 (Ct.App.1989), the court held that the IRF need not offer underinsured motorist coverage, stating:

> The State Insurance Reserve Fund falls under neither definition [of automobile insurer]. It is a special fund established and administered by the State Budget and Control Board under direct authority from the General Assembly. The Fund is not a corporation, fraternal organization, partnership, association, individual, or any of the other entities coming within the statutory definition of "insurer." Neither is it required to be licensed or authorized to issue automobile insurance policies by the South Carolina Insurance Commission as are the "automobile insurance carriers" covered by the statute. We, therefore, hold that the Fund is not an "automobile insurance carrier" within the meaning of Section 38–77–160 and the provisions of that Section do not apply to the Fund.

In the instant case, the IRF provided standardized liability insurance coverage on a number of fleet vehicles assigned to the Governor's Office. That policy did not provide underinsurance coverage, which is in line with the *Davis* decision. *Id.* In *Wright v. Smallwood,* 308 S.C. 471, 419 S.E.2d 219 (1992), the Supreme Court cited *Davis,* stating:

> There, the Court of Appeals held that the State Insurance Reserve Fund, not being an "automobile insurance carrier," is not required to offer underinsured motorist coverage.

Pursuant to Title XIX, the federal government distributes funds to each state to provide Title XIX transportation. To qualify for these federal funds, the state is required to provide Title XIX transportation. In South Carolina, the Governor's Office is charged with administering such transportation for qualified individuals. In order to comply with the federal mandate to provide these transportation services, the Governor initiated a bid process pursuant to the South Carolina Procurement Code. TMSI won the bid and entered into a contract with the Governor's Office. This court recognizes that providing these transportation services fulfills a state function pursuant to a federal mandate. The Budget and Control Board is required to insure the vehicles used in this program through the IRF and pursuant to § 1–11–140. This is the exclusive means for the procurement of insurance.

In the instant case, TMSI's employee was operating one of these insured vehicles when the accident occurred. Budget and Control Board regulations specifically allow the IRF to insure non-state employees who are operating state-owned vehicles under the same provisions as applicable to state employees. South Carolina Regs. 19–612 (1976) provides:

A. Authority

The Division of General Services is designated by the Board as the agency responsible for insuring state-owned vehicles.... No state-owned vehicle ... shall be insured through any agency other than the Division of General Services without prior approval of the Board.

. . . .

D. Nonstate Employee Operators.

Nonstate employee operators of the State vehicles shall be offered the same insurance coverage as State employee operators if they qualify under Regulation 19–603(D).

South Carolina Regs. 19–603(D) (1976) provides:

D. Authorized Use.

1. Nonstate employees such as students, volunteers, contractual services personnel, inmates or industry representatives may be permitted to operate state-owned vehicles only if such operation is on official business of the State, is within the insurance coverage provided on the vehicle, and is

authorized by the agency head or his designated representative.

The contractual services exercised by TMSI on behalf of the Governor's Office were in the furtherance of a state purpose and function. Thus, pursuant to Reg. 19–603(D), non-state employees such as personnel engaged in contractual services with the state (such as TMSI) are permitted to use state-owned vehicles if it is for official business of the state. Clearly, the transportation of patients pursuant to the Title XIX mandate would be in furtherance of the official business of the state. We believe the lower court erred in concluding that the leasing of a state vehicle to a private for-profit corporation does not authorize the IRF or Budget and Control Board to insure tort liability.

The lower court's order is premised upon the fact that the IRF cannot legally issue an automobile liability insurance policy on a state-owned vehicle if it is used by a non-governmental entity, even if it is being used to carry out a governmental function. The IRF is the only source of insurance for the Governor's Office. S.C. Regs. 19–612 (1976). In this case, the IRF issued the policy to the Governor's Office which insured the vehicle owned by that office. We find that this arrangement does not change the statutory provisions for insuring government vehicles or for insuring government tort liability.

Section 10–7–120 permits the Budget and Control Board to reinsure any portion of insurance liability established pursuant to § 1–11–140. The Budget and Control Board did not contract with American Southern for underinsurance coverage. Neither the bid specifications nor the reinsurance agreement provided for underinsurance coverage. It is implicitly clear from the bid invitation that the intent of the bid was to:

> establish a contractor to provide the Insurance Reserve Fund with 100% reinsurance on a fleet of vehicles maintained by governmental entities in the State of South Carolina. Such an arrangement is not subject to South Carolina Premium Tax. In all other respects, the successful bidder will function as a direct insurer and will provide claims, engineering, and reporting services as specified below.

In the contract of reinsurance, American Southern also agreed to provide services such as claims, loss control and engineering. If a claim arose under the policy issued by the IRF, the insured would report to the IRF, not American Southern. The claim would be adjusted by James C. Greene, who was contracted by American Southern in compliance with the claims service requirement. American Southern did not bill for premiums, contact IRF covered insureds, or renew policies. These responsibilities were performed by the Budget and Control Board through the IRF. American Southern's function was clearly that of a reinsurer. The reinsurance contract with American Southern was approximately two years old at the time the Governor's Office entered into the transportation contract with TMSI. It is unlikely that the defendants colluded two years prior to the contract to avoid providing underinsurance coverage to these plaintiffs. The IRF retained its underwriting function along with many others. It would appear under § 1–11–140 the IRF did "reinsure, upon terms which it may deem most advantageous."

The facts of this case reveal the Governor's Office has to insure the state-owned vehicles assigned to them and that the statute requires the insurance be obtained from the IRF. Further, the statute does not require the IRF to provide underinsurance coverage. The Governor's Office is charged with providing Title XIX Medicaid transportation, which it did through its contract with TMSI. TMSI was a permitted user and the mandatory omnibus language of the liability policy extends to such a permissive user. American Southern reinsures the IRF for the policies covering these vehicles pursuant to bid specifications created by the Budget and Control Board which does not require underinsurance. American Southern does not deal directly with TMSI, nor does the IRF. The IRF contract of insurance is with the Governor's Office, which they are required to provide. There is no privity between American Southern and TMSI, either through reinsurance or the underlying tort liability insurance.

Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Cafe Associates, Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E.2d 162

(1991). We therefore reverse the order of the trial court, and grant summary judgment to all appellants.

**REVERSED.**

HOWELL, C.J., and HOWARD, J., concur.